STATE OF NORTH CAROLINA, Plaintiff v. REGINALD LEE ROGERS, Defendant

No. COA08-188

(Filed 2 December 2008)

## 1. Criminal Law— request for substitute counsel—careful scrutiny not required

*State v. Thacker*, 301 N.C. 348 did not require careful scrutiny before granting defendant's request for substitute counsel in a prosecution for felonious breaking and entering and other offenses.

## 2. Criminal Law— waiver of counsel—motion to withdraw— not allowed

The trial court did not abuse its discretion when it denied defendant's eleventh-hour motion to withdraw his waiver of counsel. Defendant did not show either sufficient facts supporting his motion to withdraw the waiver or good cause for his delay in seeking the withdrawal.

## 3. Constitutional Law— adequacy representation of counsel—pro se representation

A defendant convicted of felonious breaking and entering and other offenses could not complain on appeal that his self-representation was inadequate where counsel was appointed four times for defendant, one was required to withdraw for conflict of interest, three were "fired" by defendant, and defendant sought to represent himself over the advice of more than one judge. Defendant made his choice, as was his constitutional right; he is

entitled to no special exception for the quality of his particular self-representation or his lack of access to legal materials.

Appeal by defendant from judgments entered on or about 17 August 2007 by Judge W. David Lee in Davidson County Superior Court. Heard in the Court of Appeals 26 August 2008.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Jennie W. Hauser, for the State.*

*Irving Joyner, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from judgments entered pursuant to jury verdicts finding him guilty of felonious breaking and entering, habitual misdemeanor assault, second degree rape and second degree sexual offense. Defendant contends he is entitled to a new trial because the trial court refused to appoint an attorney to represent him, and then failed to provide him with basic legal materials to effectively represent himself. We disagree and conclude instead that defendant received a fair trial, free of reversible error.

## I. Background

Defendant married Lisa[1] in 1995. They separated in 2004. Defendant moved out of the house but Lisa retained custody of their two children. On 19 November 2005 defendant forcibly entered the home Lisa shared with the two children and forced Lisa to have sex with him. Lisa reported the incident to the police and defendant was arrested on 20 November 2005.

On or about 21 November 2005, Lori I. Hamilton-Dewitt was appointed to represent defendant. On 12 December 2005, defendant wrote a letter to Ms. Hamilton-Dewitt, stating, "I, Reginald Rogers, notice the conflict of interest in my case with your representation, so in others [sic] words YOU ARE FIRED!" (Emphasis in original.) In response, Ms. Hamilton-Dewitt filed a motion to withdraw from representation of defendant based on her belief that defendant had "unequivocally terminated the attorney-client relationship in writing." The motion to withdraw was granted on 19 December 2005.

On 21 December 2005, the trial court appointed Paul Bollinger to represent defendant. By a letter dated 4 January 2006 defendant fired

---

1. A pseudonym is used to protect the identity of the victim.

STATE v. ROGERS

[194 N.C. App. 131 (2008)]

Mr. Bollinger for "conflict of interest and insignificant counsel." On the very next day, defendant fired Mr. Bollinger again, on the grounds of "racial tensions" and "unprofessional conduct." Mr. Bollinger also moved to withdraw as counsel.

On 9 January 2006 defendant was indicted by the Davidson County Grand Jury for second degree rape, felonious breaking and entering, assault on a female, and habitual misdemeanor assault. At a hearing held 11 January 2006, the trial court specifically inquired into defendant's reasons for writing the letters accusing Mr. Bollinger for racism. Defendant responded that "my wife [Lisa] is a Caucasian and I am [a] black African American . . . [and because of] the Kobe Bryant case . . . I felt that [an African-American] should represent me on these charges." The trial court found no "evidence whatsoever that . . . Mr. Bollinger [had] expressed any racist comments toward [defendant]." Accordingly the trial court denied the motion to withdraw and directed defendant to cooperate with his attorney.

Within two weeks after the 11 January 2006 hearing, defendant wrote five more letters purporting to fire Mr. Bollinger on the grounds of racism. On 31 January 2006 Mr. Bollinger again moved to withdraw as counsel. At a hearing held 7 February 2006, the trial court denied defendant's request for a new court-appointed lawyer, advising defendant of his right to represent himself and his right to a court-appointed attorney, but not a court-appointed attorney of defendant's choice. The trial court gave defendant the choice of accepting Mr. Bollinger's representation or proceeding *pro se.* Defendant chose to proceed *pro se.* The trial court granted the motion to withdraw and appointed Mr. Bollinger as standby counsel.

On 9 February 2006[2] the State moved the trial court to withdraw defendant's jail phone privileges. After granting the State's motion, the trial court set the trial date for 13 March 2006 and again inquired if defendant wanted a lawyer to represent him. Defendant insisted on court-appointed representation but refused the appointment of Mr. Bollinger. The trial court noted, "I shouldn't do this[,]" before removing Mr. Bollinger completely from the case and appointing Jim McMillan to represent defendant. On 4 April 2006, Mr. McMillan moved to withdraw from representing defendant on the grounds that he had previously represented one of the State's witnesses. The trial court allowed the motion and appointed David Freedman as defendant's counsel.

2. The transcript is dated "February 9, 2007" but we believe this to be a mistake because the written order of assignment of counsel is dated 2-9-06.

From 21 April 2006 through 16 July 2007, defendant wrote a number of letters to the Davidson County Clerk of Court requesting that his case be set for trial, some of which included complaints regarding the services of Mr. Freedman. On 25 July 2007, the Davidson County Grand Jury indicted defendant for second degree sexual offense, also arising out of the events on 19 November 2005. Defendant sent a letter dated 26 June 2007 to notify Mr. Freedman that he had been fired as defendant's counsel. On 5 July 2007 defendant appeared before Judge Wayne L. Michael and executed a "voluntary, knowing and intelligent" waiver of the right to assistance of counsel with regard to the second degree sexual offense charge.

On 10 July 2007 Mr. Freedman filed a motion requesting that he be allowed to withdraw as counsel for defendant because of defendant's termination letter and because defendant had filed a complaint with the State Bar regarding Mr. Freedman's representation. On 16 July 2007 Judge Steve Balog held a hearing on the matter, at which he conducted a thorough inquiry into defendant's desire to proceed *pro se* and advised him of the dangers of so doing. After the inquiry, defendant waived assistance of counsel in open court and declared that he wanted to represent himself. Defendant then executed a written Waiver of Counsel. The trial court appointed Shawn Fraley to serve as standby counsel. The trial court recommended a trial date of 8 October 2007 to give defendant "enough time to be prepared for trial[.]" However, at defendant's request and with the State's consent, the trial was set for the 13 August 2007 term of superior court. On 17 July 2007 defendant wrote a letter to the court complaining that "Mr. Shawn Fraley is of no help[.]" The trial court held an administrative hearing regarding discovery in defendant's case on 20 July 2007. At the hearing defendant again indicated his desire to proceed *pro se.* The trial court then conducted a careful and thorough inquiry, advising defendant of the seriousness of the charges he faced and of the benefits of being represented by counsel. At the end of the trial court's inquiry, defendant was asked, "What do you wish to do?" Defendant replied, "I wish to represent myself totally." Defendant then executed another Waiver of Counsel.

On 13 August 2007 defendant's case was called for trial as defendant had requested before Judge Balog on 16 July 2007. The State moved to join for trial 05CRS61448, felonious breaking and entering; 05CRS61449,. assault on a female and habitual misdemeanor assault; 05CRS61451, second degree rape; and 07CRS5067, second degree sexual offense, because all four offenses were from the same

transaction and supported by the same operative facts. When the trial court asked if defendant objected to the charges being joined for trial, he responded, "I didn't have adequate time to prepare for this" and moved for continuance on the grounds that he had not timely received evidence of photographs and lab reports from the State and had not had time to obtain all his witnesses. The trial court then conducted a thorough hearing, found "that either counsel, who were then counsel of record, or the defendant were timely provided information by the State with respect to all of these matters," that there were no material witnesses within the trial court's jurisdiction who could not be brought to the court, and denied the motion to continue the trial. The trial court then held a hearing on defendant's motion to suppress evidence.

Just before the trial court adjourned for the day, defendant moved in open court to withdraw his waiver of counsel:

THE DEFENDANT: I have one question. I feel like I want to know if I can religuish [sic] my six [sic] amendment right to counsel, you know—

THE COURT: My understanding is that you have relinquished your six [sic] amendment right to counsel.

THE DEFENDANT: I'm saying for the State to appoint me [an attorney], I mean, for the Court to appoint me one.

. . . .

THE COURT: You have been through how many lawyers?

THE DEFENDANT: I have this new evidence of medical stuff [lab reports] that I don't understand. I found I'm incompetent to do the trial.

THE COURT: I will not delay the trial for [the] issue of attorneys.

. . . .

THE DEFENDANT: With regard to the medical report, I don't understand these papers and charge itself. It has graphs that I don't understand. I need a medical expert or some type of forensic examiner to look at this stuff to go over with me to understand it. . . . I need a court-appointed attorney, I want to do this case but I don't have the knowledge and know how to see, you know, I am just asking, could you court [sic] appoint me an attorney for this case?

The trial court took the motion under advisement until the next day, taking time to review defendant's file that evening.

On 14 August 2007, the trial court again heard from defendant on the issue of waiver of counsel. The trial court made extensive findings of fact before concluding in open court "that there has been a forfeiture of counsel on [defendant's] part, [and] there is no good reason to set aside the last waiver that [defendant] executed on July the 20th[.]" On 16 August 2007, the trial court entered a written order *nunc pro tunc* 14 August 2007 "den[ying] defendant's oral motion for appointed counsel."

Defendant was tried before a jury from 14 to 17 August 2007 in Superior Court, Davidson County. On 17 August 2007 the jury returned guilty verdicts for felonious breaking and entering, habitual misdemeanor assault, second degree rape and second degree sexual offense. Defendant was sentenced to consecutive sentences of 11 to 14 months for felonious breaking and entering, 11 to 14 months for assault on a female and habitual misdemeanor assault, and 133 to 169 months for second degree rape and second degree sexual offense. Defendant was also ordered to enroll in lifetime monitoring as a sex offender at the completion of his sentence. Defendant appeals.

## II. The Right to Counsel

Defendant contends that the trial court erred by (1) appointing a substitute counsel at defendant's request, and (2) denying defendant the right to counsel.

### A. Substitute Counsel

[1] Defendant cites *State v. Thacker*, 301 N.C. 348, 271 S.E.2d 252 (1980) to argue that a trial court must conduct "careful scrutiny" before it *grants* substitute counsel to a defendant who requests it. Defendant reasons that he is entitled to a new trial on this basis because

> there were no facts presented in the record which support Judge Balog's several earlier decisions to replace the Attorneys who were appointed to represent [defendant]. Judge Balog's actions represented a mere surrender and concession to [defendant's] assertions that he did not want to be represented by the Attorneys appointed to him and these decisions were not supported by . . . careful scrutiny.

However, *Thacker* affords defendant no relief-for two reasons. First, *Thacker* expressly rejected the defendant's argument that "that failure to make a *detailed* inquiry [into an alleged conflict with appointed counsel] amounts to *a per se* violation of defendant's right to counsel[,]" 301 N.C. at 353, 271 S.E.2d at 255 (emphasis added), holding that "when faced with a claim of conflict and a request for appointment of substitute counsel, the trial court must satisfy itself only that present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective[,]" *id.*, 271 S.E.2d at 256. Second, in *Thacker*, the defendant's request for substitute counsel was *denied. Id.* In the case *sub judice*, defendant's requests for substitute counsel were *granted* three different times, and "[a] defendant is not prejudiced by the granting of relief which he has sought . . . ." N.C. Gen. Stat. § 15A-1443(c) (2007). Accordingly, this argument is overruled.

B. Denial of Appointed Counsel

**[2]** The trial court set forth two alternative legal grounds for its order denying defendant's request for appointed counsel: (1) defendant "clearly, unequivocally, and knowingly waived his right to counsel after being fully informed by the Court as required by G.S. 15A-1242 [and] failed to offer sufficient evidence on which the Court might consider setting aside the waivers previously executed by the defendant[;]" and (2) "defendant has engaged in an obvious and consistent pattern of purposely and willfully undertaking to discharge appointed counsel, thereby obstructing, delaying and frustrating the orderly process of his court proceedings . . . result[ing] in his forfeiture of right to counsel."

Defendant argues vigorously that the trial court's legal conclusion of forfeiture was error because:

In each of these so called "firing situations," the Presiding Judges chose, without a hint of scrutiny, to relieve counsel and appoint another attorney. . . . [T]he Judge's [sic] decisions to change counsel were *not justified. Appellant should not be held responsible or punished for unjustified actions taken by a Presiding Judge. . . . It was those past improper decisions by other Judges which allowed for the appointment of a succession of counsels, but not because of Appellant's conduct that Judge Lee relied upon in reaching his determination that Appellant had forfeited his right to the invaluable right to counsel. . . . Appellant

was appointed five attorneys to assist him in preparing and presenting his defense. The exact reasons that the Court allowed withdrawals is not clear. . . . No reasonable explanation existed to explain why any of the court appointed attorneys were allowed to withdraw . . . .

However, forfeiture was an alternative basis for the trial court's decision; the trial court also concluded that defendant's withdrawal of his waiver of the right to counsel was ineffective. This distinction is important because "courts must indulge every reasonable presumption against" the forfeiture of a constitutional right by misconduct, *Illinois v. Allen*, 397 U.S. 337, 343, 25 L. Ed. 2d 353, 358 (1970) (holding that the defendant forfeited his constitutional right to be present at his own trial when he tore up his attorney's files and threatened the trial judge); *see also State v. Montgomery*, 138 N.C. App. 521, 525, 530 S.E.2d 66, 69 (2000) (releasing two court-appointed counsels, disrupting the courtroom on two occasions and assaulting a privately retained attorney was sufficient misconduct to forfeit the right to counsel). On the other hand, the defendant bears the "burden of showing sufficient facts entitling him to a withdrawal of the waiver of right to counsel[.]" *State v. Atkinson*, 51 N.C. App. 683, 686, 277 S.E.2d 464, 466 (1981). Furthermore, when a defendant waits until near the beginning of his trial to move to withdraw his waiver of the right to counsel, as here, "the burden is on the defendant . . . to show good cause for the delay." *State v. Smith*, 27 N.C. App. 379, 381, 219 S.E.2d 277, 279 (1975); *see also Atkinson*, 51 N.C. App. at 686, 277 S.E.2d at 466.

The trial court must weigh the cause for which defendant requests to withdraw his waiver, with due consideration to the defendant's timing of the motion and the court's need to conduct its business in an orderly and timely fashion. *State v. Hoover*, 174 N.C. App. 596, 598, 621 S.E.2d 303, 305 (2005) (finding no error in the denial of a motion to withdraw waiver of counsel when the "defendant had four counsel appointments and requested change of counsel four times in approximately eighteen months[,] sought to withdraw his waiver of counsel two weeks prior to the beginning of trial[, and] failed to clearly state a request to withdraw his waiver of counsel"), *cert. denied*, 360 N.C. 488, 632 S.E.2d 766 (2006); *Atkinson*, 51 N.C. App. at 686, 277 S.E.2d at 466; *Smith*, 27 N.C. App. at 381, 219 S.E.2d at 279 ("In this case the defendant delayed until the day his case was scheduled for trial before moving to withdraw the waiver and have counsel assigned. If this tactic is employed successfully, defendants will be

permitted to control the course of litigation and sidetrack the trial."). The trial court's denial of a motion to withdraw a waiver of the right to counsel is reviewed for abuse of discretion. *State v. Blankenship*, 337 N.C. 543, 553, 447 S.E.2d 727, 733 (1994), *overruled on other grounds, State v. Barnes*, 345 N.C. 184, 230, 481 S.E.2d 44, 69 (1997); *accord U.S. v. Woodard*, 291 F.3d 95, 111 (1st Cir. 2002) ("In light of [the trial] court's superior vantage point for evaluating matters such as these, we owe considerable deference to that finding." (Citation and quotation marks omitted.)).

Defendant argued to the trial court that the assistance of counsel became necessary when he was faced at the last minute with lab reports that he did not understand. However, the record shows that when the specific issue of the State's provision of lab reports and other discovery came before the trial court during the hearing on 20 July 2007, the following colloquy ensued:

THE COURT: You apparently deny that you have gotten all of your discovery?

THE DEFENDANT: Yes, sir, I do.

THE COURT: So the DA will make an effort to research all the discovery materials on you through your standby counsel.

THE DEFENDANT: I don't want counsel. I want to represent myself. I deny counsel. I waive counsel right now because there is problems [sic] right now. . . . I don't want a standby counsel. I want to represent myself and control my own fate and destiny.

Additionally, though the lab reports themselves do not appear in the record, during the hearing on defendant's motion to suppress on 23 July 2007, the trial court noted that "Defendant's Exhibit 8 is a copy of a case supplement report [from the S.B.I.], Defendant's Exhibit Number 9 is a laboratory disposition of report." Because defendant flatly refused standby counsel for the purpose of researching discovery materials and because there is evidence in the record that defendant had copies of the materials related to the lab reports in advance of the trial, we conclude the trial court did not abuse its discretion when it concluded that defendant "failed to offer sufficient evidence on which the Court might consider setting aside the waivers previously executed by the defendant."

The record further indicates that defendant did not show any good cause for waiting until the eve of his trial to move to with-

draw his waiver of counsel. Defendant had already delayed his trial for months as he fired three different appointed attorneys and a standby counsel. The judges before whom defendant appeared worked hard to accommodate defendant, protect defendant's right to counsel and bring the case to trial in a timely manner. In fact, before denying defendant's motion to withdraw his waiver of counsel, the trial court noted:

> It is amazing to me. I haven't [in] the time that I have been on the bench seen this effort on the part of judges and lawyers to offer assistance to a defendant. I really haven't seen it. I haven't seen it in the time I have been on the bench. You have the best in the State.

Because we conclude that defendant did not show either sufficient facts supporting his motion to withdraw the waiver of counsel or good cause for his delay in seeking to withdraw his waiver, we hold the trial court did not abuse its discretion when it denied defendant's eleventh hour motion to withdraw his waiver of counsel. Accordingly, this argument is overruled.

### III. Provision of Legal Materials to *Pro Se* Defendant

**[3]** Defendant further contends that he is entitled to a new trial because "[t]he many rules and procedures which licensed attorneys have been educated and trained to understand and apply became a court imposed axe which swung with vengeance against this Appellant as he struggled mightily against every odd to present his case and have his day in court." Defendant acknowledges that "[t]he general rule is that an individual who represents himself is held to the same standards and knowledge as that of a licensed attorney[,] but contends that "[w]hile this standards [sic] might properly apply to many *pro se* litigants, he [sic] should not be literally applied in this case[,]" because defendant did not have access to "any information, documents or books regarding the North Carolina Rules of Evidence or trial practice and strategy materials" during his pre-trial incarceration.

Defendant's brief concedes that "Appellant can not make the claim that our Court has declared that these materials are required by North Carolina statutes or [the] [C]onstitution to be presented to an un-represented defendant[,]" but argues the spirit of the constitutional rights to counsel, confrontation, due process, and freedom from cruel and unusual punishment require that "the Court should

provide basic legal materials to an incarcerated defendant who is representing himself."

To the contrary, this Court has held that

[w]hen a defendant elects to represent himself in a criminal action, the trial court is not required to abandon its position as a neutral, fair and disinterested judge and assume the role of counsel or advisor to the defendant. The defendant *waives counsel at his peril* and by so doing acquires no greater rights or privileges than counsel would have in representing him.

*State v. Brincefield*, 43 N.C. App. 49, 52, 258 S.E.2d 81, 83-84, *disc. review denied*, 298 N.C. 807, 262 S.E.2d 2 (1979) (emphasis added). Defendant chose to represent himself over the advice of more than one judge who sought to warn him of the seriousness of the charges against him and the perils of proceeding *pro se*. The trial court could not force defendant to accept representation if he did not want it. *Faretta v. California*, 422 U.S. 806, 836, 45 L. Ed. 2d 562, 582 (1975); *Thacker*, 301 N.C. at 354, 271 S.E.2d at 256. We concluded *supra* that defendant did not offer the court a sufficient reason to withdraw his wavier of counsel. Four times the trial court appointed counsel for defendant, one time counsel was required to withdraw on account of a conflict of interest, defendant "fired" the other three for no good reason appearing in the record. Defendant made his choice, as was his constitutional right. He is entitled to no special exception for the quality of his particular self-representation or his lack of access to legal materials. *See Brincefield*, 43 N.C. App. at 52, 258 S.E.2d at 84 ("Whatever else a defendant may raise on appeal, when he elects to represent himself he cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel."). Accordingly, this argument is overruled.

### IV. Conclusion

The trial court did not abuse its discretion when it denied defendant's motion to withdraw waiver of counsel. Furthermore, defendant may not complain on appeal that his self-representation was inadequate. Defendant received a fair trial, free of prejudicial error.

No Error.

Judges McGEE and McCULLOUGH concur.