IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-613

Filed 18 February 2026

Union County, Nos. 18CR055480-890; 18CR055481-890; 18CR055488-890

STATE OF NORTH CAROLINA

v.

DAVID BRADLEY WEBBER

Appeal by Defendant from judgments entered 28 August 2024 by Judge James P. Hill, Jr., in Union County Superior Court. Heard in the Court of Appeals 13 January 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Asa C. Edwards, IV, for the State-Appellee.*

*Blass Law, PLLC, by Danielle Blass, for Defendant-Appellant.*

COLLINS, Judge.

Defendant David Bradley Webber appeals from judgments entered upon a jury's guilty verdicts of various crimes. Defendant argues that the trial court violated his Sixth Amendment right to counsel by finding he had forfeited counsel and waived counsel by conduct. We find no error.

## I.  Background

Defendant was arrested on 28 October 2018 and charged with 1) robbery with a dangerous weapon; 2) possession of a firearm by a felon; 3) felony speeding to elude

arrest; 4) resisting a public officer; 5) conspiracy to commit robbery with a dangerous weapon; and 6) possession of a stolen firearm.

**A. Attorney #1**

The court determined Defendant to be indigent and assigned Attorney #1 as his counsel on 31 October 2018. Defendant pled not guilty, and a trial date was set on the 11 November 2019 trial calendar. During a 23 July 2019 motion hearing, the State indicated that it was unclear whether the Federal prosecutor was going to federally charge Defendant, and the case was delayed.

The case was set for trial on the 2 August 2021 calendar. At calendar call on 2 August 2021, the State asked to have Defendant put on two-hour standby. Attorney #1 stated that he and Defendant were "having some issues" and asked the court to address Defendant about the status of his representation of Defendant. The court asked Defendant if he wished to speak.

Defendant stated, "I didn't say I had no problem with [Attorney #1]. I can bring some evidence and show the things he may be doing, transcript that he say I was an accessory to the case. I can bring that." He further complained, "All I ask [Attorney #1] what's going on with my case, that's all I ask him. The attitude, he walked away from me. You know [Attorney #1], know him for years, know he got a mouth, you know, he got an attitude problem, that's all I'm saying."

Attorney #1 explained that it was difficult to be prepared when Defendant had missed scheduled meetings where they could have discussed the case. He further

explained,

> I can't communicate things of substantive nature in the courtroom on the day of court. And is that frustrating to me? Yeah, it is. It means I can't be prepared properly and I tried to get a number for [Defendant] for the telephone standby and we just -- we had issues from there, as I'm sure you can tell. There's -- and I felt like I got an undertone of [Defendant] would bring things to court that indicated I was an accessory to these things. I don't know if that's the case or not. I certainly hope not but I'm worried about the relationship and I felt like it was appropriate to bring it up to you.

The court asked Defendant if he wished for another attorney and explained to him that, if he did, it would delay his trial. Defendant asked the court, "So everything he say you going to believe? Like I say, I could bring facts." Ultimately, Defendant stated, "I want a new attorney." The court allowed Attorney #1 to withdraw, "given the disagreements and issues that they have."

When the court appointed Attorney #2 as Defendant's counsel, the following exchange occurred:

> THE DEFENDANT: If I may, for my lawyer, I can fire that lawyer too, y'all giving me a lawyer I ain't never heard of.
>
> THE COURT: Sir, let me explain something to you, okay. These attorneys are appointed to represent you zealously and make sure that they do everything possible for you, okay. [Attorney #1] was doing that but you reached --
>
> THE DEFENDANT: How do you know that?
>
> THE COURT: Not -- you're interrupting me. That is who is going to represent you. What I want to explain to you, that if you continue to have problems with attorneys it can

reach a point where you won't have an attorney at all. I'm not saying that that's anywhere near here but it can happen. If you don't cooperate with your attorney that can happen. That's all with this matter. [Attorney #2] will be your attorney. Make sure that you see him prior to your next court date so that he can be prepared to represent you. Thank you [Defendant].

Defendant then asked for an "upgrade" to the disk containing evidence against him because some of the files on the disk didn't work: "The only thing that works videos, like chases and stuff but everything else don't work. So I'm asking for an upgrade so I can see -- in my constitutional right I've got to see that any evidence; right? Any evidence y'all, I've got to see that." The court told Defendant that Attorney #2 may be able to see the files and, if not, they could address that at court on a later date.

**B. Attorney #2**

A little over four months after he had been assigned to represent Defendant, Attorney #2 moved to withdraw on 13 December 2021, stating,

> I met with the [D]efendant . . . on November 1st, November 19th, and November 29th. None of the meetings have gone well. And the last meeting, you know, we tried to sit down and start going through the case, and basically he accused me of lying and left the room. So I don't know if, at this point, we can possibly try to work together to move this case on at this point in time, Your Honor.

The court asked Defendant if he would like a different attorney, and Defendant responded, "Yes, sir." Defendant said, "I have a situation with the NAACP. I'm trying to see what's up with them with their attorney. So can you give me time with that as

well?  If I can't get an attorney with them, I'll pay for my own attorney."

The court allowed Attorney #2's motion to withdraw and appointed Attorney #3, explaining to Defendant, "And if it turns out that you do not want a court-appointed attorney, that's going to be your business.  There's nobody that's going to require you to take any particular attorney, but you don't have your pick of the ones that are off the court-appointed list, just so we're straight on this."

The court set the case for an administrative hearing on 24 January 2022.  Defendant then stated to the court, "I need all my discovery from my ex-attorney.  I need all of my evidence, because I don't have it."  Attorney #2 explained that he would turn over his entire file to Attorney #3.  Defendant proceeded to give a long explanation of why he had called Attorney #2 a liar:

> THE DEFENDANT: But can you ask [Attorney #2] who gave him my discovery, if you don't mind, sir, who gave him the discovery?  That's what I need to know, if you don't mind, so it will be on record.  Nobody had nothing to hide, so you can tell me who -- who gave you the wrong discovery?
>
> THE COURT: I can tell you typically the discovery comes from the DA's office.
>
> THE DEFENDANT: Right.  He told me [Attorney #1] gave it to him.  That was false.
>
> THE COURT: Well, that may be --
>
> THE DEFENDANT: Because hold on.  The reason I say that --
>
> THE COURT: -- because he was your first attorney.
>
> THE DEFENDANT: Let me talk, sir.  I'm sorry, I didn't

mean to --

THE COURT: You're telling me to let you talk?

THE DEFENDANT: No, I didn't mean to cut you off. I didn't mean to cut you off. No disrespect. But like I was saying, when I go through the discovery he gave me, the same paperwork I gave [Attorney #1] it so happened the DA had. So why is that? That's the reason I got mad and called him a liar. He told me [Attorney #1] is the one that gave it to him. I called the assistant, said [Attorney #1] never delivered nothing to him. That's the reason I got mad. That's the reason I didn't want him on my case, but he beat me to the punch. Like he just said the DA gave it to him. If the DA gave it to him, why he got the paperwork that I gave to my attorney, my ex-attorney?

THE COURT: All right. I'm going to leave it January 24, 2022. Good luck.

## C. Attorney #3

The case came on for trial on 31 October 2022, at which time the State moved to amend two of the indictments. The court allowed the amendments over Attorney #3's objection. Attorney #3 moved for a continuance for time to prepare for trial based on the amended language of the indictments. The motion was denied. Defendant asked if he could speak. The court denied the request but allowed a moment for Defendant to speak with his attorney.

The court proceeded to read motions Attorney #3 had filed on Defendant's behalf. Attorney #3 then indicated that Defendant wanted to address the court about his counsel. The following exchange took place:

THE COURT: . . . . If you would like to address me, I will hear you.

- 6 -

> THE DEFENDANT: All right.  Thank you.  I'd like to get another attorney.
>
> THE COURT: Would you like to say anything else?
>
> THE DEFENDANT: No, sir.  I just want another attorney, if you don't mind.

The State noted that the case had been "pending for quite some time" and that Defendant was on his third attorney.  The court denied Defendant's motion to replace his counsel and addressed the motions filed by Attorney #3 on Defendant's behalf.

Attorney #3 again indicated that Defendant wanted to address the court, and the following exchange took place:

> THE DEFENDANT: Yeah, I'm kind of confused what's going on.  I haven't sat down and talked to my lawyer yet and we doing these motions and stuff.  I might want some motions filed myself so like I don't understand what's going on.  Like nobody want to hear my opinions or anything but y'all trying to prosecute me.
>
> THE COURT: Just a moment ago I interrupted what we were doing in Court so that your lawyer could speak to you, so what you just said is not accurate.  Somebody does care about what you think -- hold on, don't interrupt me, I'll let you speak.  I just gave you a moment to speak to your lawyer.  You know what, I'm going to do it again.  At this point I'm going to direct both of you to a room outside of the courtroom where you can have some privacy.

The court recessed for twenty-three minutes.  During Defendant's meeting with Attorney #3, "the bailiff had to actually shut the doors in between the vestibule and the courtroom . . . because [Defendant] was screaming at [Attorney #3]."  Upon returning, Attorney #3 moved to withdraw, stating, "I would cite what I believe is a

conflict of interest based upon attorney-client privileged conversation that I've just had with [Defendant]. I believe that we have had a breakdown in communication and [Defendant] has asked that he be appointed new counsel." When asked if he wanted to say anything, Defendant responded,

> Yeah, I just feel like it's not in my best interest. And I ain't seen him since he been my lawyer so I ain't understand why we file these motions. If I ain't never sat down with him and go over my motion of Discovery. He knows nothing about my case, that's all I'm saying.

An extensive exchange between the court, counsel, and Defendant ensued. The State informed the court that Defendant was being represented by his third attorney and that discovery had been provided. The State asserted that Defendant had been repeatedly instructed to meet with counsel to prepare for trial but had failed to keep scheduled appointments, causing any lack of communication to be attributable to him.

Defendant disputed that characterization. He stated that Attorney #1 "was saying some corrupted things in the courtroom that he ain't supposed to say. . . . I got the other dude [Attorney #2] and our situation it was a misunderstanding on my part and they gave me him. I missed one appointment." He further stated of Attorney #3's representation, "I missed one appointment. I drive trucks so I called him and told him I couldn't make it. But other than that, you know what I'm saying, I made the appointments." He argued that Attorney #3 didn't know anything about his case because they had not met.

When the court asked Defendant if he was prepared to represent himself at trial that day, Defendant responded, "You said today?  No. . . . No sir, I'm not."  The court addressed Defendant as follows:

> And it appears at this point that any conflict that may exist between you and your present counsel, [Attorney #3], is artificially created by you in order to delay this trial.  That's what it appears like to me.  And if that is the case, then you are in a situation where you may actually forfeit the right to counsel at all and you may be sitting over there by yourself when we start picking a jury this afternoon.  So that's the situation you're in now.  This case can't go on indefinitely and every time you come to court there is some issue with a lawyer and the [c]ourt is expected to just keep putting the case off, keep putting the case off.  That's not how this works.
>
> . . . .
>
> So the position that you're putting this [c]ourt in is do we let justice be denied because you keep coming up with artificial reasons, potentially, or possibly, I don't know, to keep putting this case off?  That's not how this works.  So I'm going to pause because the State wanted to be heard further, I'm going to hear from the State next.

A brief recess was taken so the clerk could search the files to give the court some context and background about what had happened between Defendant and his attorneys.  The court then engaged in further, extensive discussion with Defendant and the State about the history of the case and Defendant's previous attorneys' withdrawals.  At one point, the court asked Defendant if he had anything he wanted to say about his prior attorneys' withdrawals.  Defendant responded,

> I don't want to place blame on nobody, man.  I mean, but

at the end of the day, ain't nobody perfect. I mean, so like if you do look at the file, you seen something, that don't mean they right. That why I ain't understand like what the purpose of you looking at the file when he got the motion. Like it don't mean nothing. Because at the end of the day lawyers lie too; right? Everybody lie. So that stuff don't mean nothing.

The court allowed Attorney #3's motion to withdraw. The court then engaged in further, extensive discussions with both parties as to whether Defendant should be appointed another attorney or required to represent himself at trial that day. During that discussion, the State argued as follows:

> [Defendant] does not meet with his attorneys which reasonably causes them to ask for a continuance. We may place the case on the trial calendar for status so that [Defendant] comes in to try to give him an opportunity to speak with his counsel. That happened with [Attorney #1], it happened with [Attorney #2,] and it's happened with [Attorney #3]. We actually calendared the case in administrative court for an administrative setting so that [Defendant] was told by the judge in admin court you need to meet with [Attorney #3]. You need to get the ball rolling in your case. [Defendant] is, at the end of the day, an obstructionist of us being able to call his case. He has wanted a trial, and I will give him that, his case was arraigned quite quickly after hitting the administrative calendar. He stated, I want a trial. His co-Defendant's case was taken federally because his co-Defendant is the one, the State would suggest, that actually went into the cellphone store to perpetrate the robbery. [Defendant] was the getaway driver. That's the State's version of the facts, your Honor. As the Court is well aware, the Feds get to cherrypick what cases they take. They left [Defendant], they took the co-Defendant.
>
> I can tell the Court that [Defendant] is familiar with the evidence in his case as well. Because within the last few

months [Defendant] actually called the district attorney's office and tried to convince our office investigator that he had video of somebody stealing stuff from his car that was a part of this case. And when confronted by our office investigator about that, [Defendant] then backed up and hung up the phone. He is well aware of the evidence against him, your Honor. He is very much aware of how this works and he is at the point that he is obstructing the proceedings.

My recollection with [Attorney #1] is that there was a conflict between these two gentlemen about that representation. Then that happened again with [Attorney #2]. And he is, as the Court previously suggested, artificially creating a conflict. He didn't meet with [Attorney #3], we were ready to go. He's told by the [c]ourt in August you need to have your stuff together, you need to be here, you need to be ready to go for this term. It was preemptively set by the [c]ourt. Everything is fine and then if the [c]ourt noticed in the back while we were proceeding with some of the other matters this morning, that the bailiff had to actually shut the doors in between the vestibule and the courtroom. That's because [Defendant] was screaming at [Attorney #3].

So your Honor, I understand that this hasn't risen to some of the case law where we have a [d]efendant who is spitting in the face of counsel or anything like that, but this is just a pattern of behavior where we are going to be right back here yet again. [Defendant] has been told this before, now we're going to be back here in a few months and we're going to do this again and [Defendant] says, oh, no, I'm going to work with my attorney. And then we're back here trying to call the case that's four years old because [Defendant] wants counsel of his choice, which is not his legal right if he is pursuing an indigent lawyer. He has the right to counsel that's appointed by the [c]ourt. And then when he doesn't like that counsel and makes representations that those attorneys are working for the State, he doesn't like it and then he creates a conflict and we're here doing this exact same thing, your Honor. I would suggest that this is

obstructionist.

Defendant responded,

> I don't miss no -- you got to think, I'm facing years and I'm innocent, why would I miss an appointment. That don't even make sense. I got to go to trial, right. So why would I try to prolong anything? I'm innocent, I have nothing to hide, right. I'm ready to go to trial. But at the end of the day I need a lawyer though. That's my right. You can't say well he had two attorneys so I ain't going to give him counsel, that don't even make sense. You don't even know the situation.

After extensive discussion and deliberation, the court ultimately concluded that Defendant had not yet forfeited his right to counsel and appointed him another attorney, stating:

> All right. I don't want to just keep belaboring this so my decision is going to be that it appears that at least in part there has been some scheduling conflicts with past attorneys. It's not clear from my review of the file that the attorneys were allowed to withdraw exclusively because of the actions of [Defendant]. It appears that at least in part there has been some scheduling conflicts with past attorneys. I will note that it does appear that a conflict was created just this morning between [Defendant] and [Attorney #3] based on comments by [Defendant]. However, based upon some of the cases that I reviewed during the break, I am not convinced or persuaded that this rises to the level of severe or serious misconduct.
>
> So at this point I think it is my responsibility to make sure that the trial does proceed fairly. And in order to do that, he will need new counsel appointed and I'm going to -- just so you know, I'm going to include findings in this record such that if you don't cooperate and proceed with your next attorney to a resolution of this case, so could be the basis of another judge or even me later if I'm cycled back into the

rotation here in Union County, it could be the basis for that judge to find that you have in fact forfeited all counsel and then you would be trying this case by yourself.

The court appointed Attorney #4 to represent Defendant but warned,

And if you come back in here the next time with yet another conflict to me, I think that's going to rise to a level of serious or severe misconduct where it appears that all you're trying to do is delay this case so it's never tried. So that's where you are at this point. Do you have any questions about anything I just said?

Defendant responded, "No." At some point, the case was set for trial on 6 March 2023.

**D. Attorney #4**

On 28 February 2023, Attorney #4 filed a motion to continue, specifically noting "[t]hat this need for additional time to prepare is not in any way the fault of the Defendant." The court allowed the motion, and the case was set on the 30 October 2023 trial calendar.

On 24 October 2023, Attorney #4 filed another motion to continue. The case was called for trial on 30 October 2023. The State indicated to the court, "from my understanding from [Attorney #4] there is a motion to continue that [Attorney #4] filed last week, but in addition to that I believe there might be a counsel issue that needs to be addressed."

Attorney #4 explained to the court,

So I spoke with [Defendant] this morning, he informed me that he had retained [Attorney #5] from Mecklenburg County. I just now spoke with [Attorney #5's] office, they did confirm that she was retained. They indicated that she

- 13 -

> was in Mecklenburg County first and was heading here as
> soon as she got done so they expected her to get here some
> time soon.

Defendant confirmed that he had hired Attorney #5. The court determined they needed to wait for Attorney #5 to arrive before addressing any matters in the case.

After a brief recess, the parties reconvened and Attorney #4 indicated that Attorney #5 was not coming to court because she "had had some sort of family emergency[.]" The court took a recess so it could contact Attorney #5 directly.

**E. Attorney #5**

The parties reconvened, and the court indicated that Attorney #5 confirmed via telephone that Defendant had paid her "some money" to represent him but that she was not able to appear in court due to "internal office issues going on over the weekend" and some personal issues. The court ordered everyone involved, including Attorney #5, to appear the following day.

The following day, Attorney #5 entered a general appearance in the case. She explained that Defendant had paid "some of" her quoted fee, but that she had not yet been retained for the case. Nonetheless, she had intended to appear because she "didn't want to leave him hanging." She apologized for not being available the previous day and for not being prepared to try the case. She added, "I didn't know it was already on the trial [calendar] and especially didn't know it was Number 1." Defendant signed a waiver of court-appointed counsel, and Attorney #4's motion to withdraw was allowed.

- 14 -

The court then considered whether to continue the case. The court told Defendant, "If I do grant the continuance[,] it's only going to be one continuance and then we're going to proceed with the case. Do you understand?" Defendant responded, "Yes, sir." After hearing from the State, Defendant, and Attorney #5, the court allowed the case to be continued, stating, "This will be the last continuance motion."

The case was continued to 27 November 2023. On that date, Attorney #5 did not show, and the case was continued to 5 February 2024. On 5 February 2024, Attorney #5 moved to withdraw because she had not been able to work on the case due to family issues. The court denied the motion but continued the case and set it for trial on 4 March 2024.

At a hearing on 22 April 2024, an attorney appearing on behalf of Attorney #5 renewed her motion to withdraw, explaining that Attorney #5 was facing criminal charges in Mecklenburg County. Defendant stated he had had a "horrible" experience with Attorney #5 and had filed a lawsuit against her to get the money back that he had paid her.

The court removed Attorney #5 from the case and asked Defendant what he was going to do about an attorney going forward. Defendant stated he had spoken to Attorney #6 back in February but was unable to hire him without Attorney #5 returning his money. The court stated to Defendant, "I just want to make sure, you do not want to be considered for a court appointed attorney, you're going to hire your

own attorney?" Defendant responded, "Yes, ma'am. I have no choice." The following

exchange took place:

> THE COURT: . . . I just want to make sure you understand. I know you have had several court appointed attorneys and you hired [Attorney #5] and now you're in the process of trying to -- of hiring [Attorney #6]. I just want to go through your charges, make sure you understand your maximums. So you have one count of felony flee to elude, that's a Class H maximum punishment 39 months, one count of resisting a public officer, Class 2 misdemeanor maximum punishment 60 days, one count of robbery with a dangerous weapon, Class D maximum punishment 204 months. One count of conspiracy to commit robbery with a dangerous weapon Class E 88 months, one count of possessing firearm by a convicted felon Class G 47 months and one count of possessing a stolen firearm Class H 39 months for a total maximum punishment of 419 months. Knowing what you're facing, you do not want me to consider you for a court appointed attorney?
>
> THE DEFENDANT: No, I got to hire -- I got to hire my own attorney. I really have no choice. My back against the wall.
>
> THE COURT: Well, you have a choice. That's what I'm asking. Do you not want me to consider you for court appointed attorney?
>
> THE DEFENDANT: I had them before, ma'am, and it's hard. Like, I ain't going to stay on that. No, I'm going to hire my own.

The court had Defendant sign a waiver of appointed counsel form. The court

set 19 August 2024 as the trial date. The State indicated that it had communicated

with Attorney #6, who said he had not been hired to represent Defendant. The court

asked if it would be a good idea to put the matter on the July administrative calendar

to address Defendant's counsel situation.

The following exchange took place:

> [THE STATE]: I think that's probably a good idea, your Honor. Because I will tell the [c]ourt based on this umpteenth waiver from [Defendant] now that the State intends to proceed on the August date regardless of whether or not [Defendant] has retained counsel by that date. As the Court can see, this matter was indicted February 11th of 2019 and we have gone through multiple, multiple attorneys in this matter, your Honor. I would -- that August date -- excuse me, the July admin date would be July 15th.
>
> THE COURT: Okay. All right. [Defendant], so your next Court date is July 15th. That's an admin session.
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Your case -- the State's calling your case for trial August the 19th. So you need to go see [Attorney #6] and make sure he understands that, that it's already set for trial August 19th. But you need to be here July 15th to -- if there's any issues with that August date the Court can address that before then.
>
> THE DEFENDANT: Okay.
>
> THE COURT: Okay. So July 15th is admin and August 19th is your trial date. Okay. Any questions?
>
> THE DEFENDANT: No, ma'am. Thank you.

## F. No Attorney

Defendant appeared by himself on 15 July 2024 without having hired an

attorney. He stated he was unable to hire Attorney #6 because Attorney #5 had not

returned his money. The court asked Defendant if he would like appointed counsel. Defendant responded, "So I'm just waiting to get my money back so I can get a retained attorney. I don't feel comfortable hiring no public defenders up here . . . ." Defendant explained that he was not comfortable hiring a public defender because he had alleged that a police officer had planted evidence against him:

> The reason I got a problem with the Public Defender's Office, because my allegation what the officer did stealing the evidence, even planting evidence. Every time I tell my attorneys, they don't want to work on my case. . . . All y'all know each other in here, let's keep it real, right. Every time I tell the attorneys about what this officer did, I have evidence, even gave it to the DA, they brush me off, they didn't want to work on my case.

The court told Defendant, "I'm not going to change the court date right now. It sounds like you don't want a court appointed attorney. You still want to hire your own attorney given the circumstances." Defendant responded, "I can't have a court appointed attorney." The court warned, "Okay. So you need to make sure you get somebody retained before the 19th August trial date."

Defendant asked if he would have to represent himself if he was still unable to get his money back and hire a new attorney by the 19th. The court responded that it was unable to answer a question "contingent on circumstances." Defendant then asked what would happen if he did not have an attorney on the 19th. The court responded, "Then that will be up to the judge on the 19th. I'm not going to be here."

On 19 August 2024, Defendant appeared in court by himself without having

hired an attorney. The State addressed the court:

> [Defendant] has been put on notice those last two court dates that the State intended to call this case as Number 1 today and that whether he showed up with an attorney or not we intended to move forward. So I believe we need to address the attorney issue before the State moves to do forfeiture of counsel.

The court took an hour recess to read the case file. Upon returning, the State apprised the court that, at the previous hearing, the court advised Defendant that the State intended to call this matter first for trial this session. The State then gave the court an extensive history of the case with regard to Defendant's counsel and the warnings the court had given Defendant about not showing up with an attorney.

The court then asked Defendant if he disputed anything that the State had said. Defendant responded, "Basically everything." Defendant stated that he and Attorney #1 "had no conflicts of interest" and further asserted, "I told him I would let him go but then I changed my mind but the [c]ourt ordered to let him go." He also stated, "The other three lawyers that I had, there were never no conflict of interest. The conflict of interest would be there in my file." He also alleged that Attorneys #2, #3, and #4 "never worked on my case." He said he gave Attorney #5 "all his money" and that he fired her. Defendant concluded by saying, "If you look in the file, we did a speedy trial 2018. So it's impossible that I'm playing any kind of games."

The court then listened to considerably more argument from the State and Defendant as to whether Defendant had forfeited or waived his right to counsel. The

court took the matter under advisement over an extended lunch period. Upon returning, the court recited extensive findings of fact and, based on those findings, concluded that Defendant had forfeited counsel and waived counsel by conduct:

> Defendant has refused to obtain counsel after multiple opportunities to so do and after having been appointed attorneys on four separate occasions over a four year period. And that based upon Defendant's continually hiring and firing counsel, thereby significantly delaying the proceedings, to a period of some five -- approximately five and a half years.

> The [c]ourt concludes that the Defendant has forfeited his right to counsel, and further that after being warned that he would lose the right to counsel if he engaged in dilatory tactics by [the court] and further after being told that his case would be first on the trial list during this session starting today, August the 19th of 2024, by [the court] approximately 118 days ago and subsequently [by the court] another 34 -- and approximately 34 days ago that by conduct the [c]ourt concludes that the Defendant has not only forfeited counsel but also waived his right to counsel by conduct. All right.

> The [c]ourt determines that the Defendant should be required to go forward representing himself in these matters. That's over Defendant's strong objection.

The court was unable to appoint standby counsel because most every available attorney had been conflicted out due to their prior appointment to Defendant. Defendant represented himself through a day of motions and a day of jury selection. On the fourth day, Defendant failed to appear. His bond and pre-trial conditions of release were revoked, and a warrant was issued for Defendant's arrest.

On 26 August 2024, Defendant was found guilty of six crimes. Defendant was

present in court for sentencing, and the court sentenced him to five consecutive sentences in the presumptive range. Defendant gave oral notice of appeal on the same day and filed a written notice of appeal on 9 September 2024.

## II. Discussion

Defendant argues that the court violated his Sixth Amendment right to counsel by finding he had forfeited counsel and waived counsel by conduct.

## A. Standard of Review

The standard of review for an alleged constitutional violation is de novo. *State v. Steele*, 260 N.C. App. 315, 319 (2018) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33 (2008) (quotation marks and citation omitted).

## B. Right to Counsel

"The right to assistance of counsel is guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Sections 19 and 23 of the Constitution of North Carolina." *State v. McNeill*, 371 N.C. 198, 217 (2018) (citation omitted). "The right to counsel in criminal proceedings is not only guaranteed but is considered to be fundamental in character." *State v. Harvin*, 382 N.C. 566, 584 (2022) (quotation marks and citation omitted). "This fundamental constitutional right may, however, be surrendered at the choice of a defendant or lost as a result of serious obstruction or misconduct of the defendant." *State v. Atwell*, 383 N.C. 437, 446 (2022) (citation

omitted).

## C. Voluntary Waiver of Counsel

A defendant may choose to surrender the right to assistance of counsel through voluntary waiver. *Id.* at 447; *see also* N.C. Gen. Stat. § 15A-1242 (2024) ("A defendant may be permitted at his election to proceed in the trial of his case without the assistance of counsel . . . ."). "Thus, for a waiver of counsel to be constitutional and comply with our state's statutory requirements, a defendant must, as an initial point, seek to proceed *pro se*." *Atwell*, 383 N.C. at 447 (emphasis omitted).

Here, it is plain that Defendant did not seek to proceed pro se. Instead, he continuously sought both appointed and retained counsel and indicated he did not want to proceed pro se. Although he signed two waivers of court-appointed counsel, he never signed a waiver of all counsel. Contrary to the State's argument, Defendant did not voluntarily waive assistance of counsel.

## D. Forfeiture of Counsel

Turning to the first issue raised by Defendant, whether he forfeited his right to counsel, we conclude that Defendant engaged in the level of misconduct which may permit a court to compel a criminal defendant to proceed to trial without counsel. *See id.* at 446.

"Forfeiture of the right to counsel is not an express choice to proceed pro se, but rather is a loss of the right to counsel which is imposed as a result of a defendant's 'egregious misconduct.'" *Id.* at 449 (quoting *State v. Simpkins*, 373 N.C. 530, 535

(2020)). Such misconduct may include "a criminal defendant's display of aggressive, profane, or threatening behavior." *Harvin*, 382 N.C. at 587.

> [A] forfeiture of the right to counsel can also result where a defendant remains polite and apparently cooperative if the defendant's "obstreperous actions" are so severe as to impair the vindication of the goals of according criminal defendants a right to counsel or which operate to completely prevent a trial court from proceeding in the case[.]

*Atwell*, 383 N.C. at 449 (citations omitted).

> If a defendant refuses to obtain counsel after multiple opportunities to do so, refuses to say whether he or she wishes to proceed with counsel, refuses to participate in the proceedings, or continually hires and fires counsel and significantly delays the proceedings, then a trial court may appropriately determine that the defendant is attempting to obstruct the proceedings and prevent them from coming to completion.

*Simpkins*, 373 N.C. at 538. In that case, "the defendant's obstructionist actions completely undermine the purposes of the right to counsel," and the court may find the defendant forfeited his right to counsel. *Id.*

Here, it is readily apparent that "[D]efendant's obstructionist actions completely undermine[d] the purposes of the right to counsel," *id.*, and the court correctly found and concluded that Defendant forfeited his right to counsel.

More than three years passed between the time Defendant's case was first called for trial on 2 August 2021 and the date his trial began on 19 August 2024. During that time, Defendant fired, or conflicted out, four appointed attorneys.

Defendant's intent to delay his trial with his tactics is evident from the fact that he fired or conflicted out his court-appointed counsel each time his trial date became imminent–three of the four attorneys were fired or conflicted out on the day the case was called for trial. Defendant's intent to delay his trial with his tactics is further evident from his artificial and uncredible reasons for firing or conflicting out his attorneys–the attorneys were lying about various things, Defendant did not miss but one appointment, and the attorneys knew nothing about his case.

Following the appointment of four successive attorneys, Defendant formally waived his right to the appointment of counsel. Defendant thereafter privately retained Attorney #5, who was undoubtably a disaster and was swiftly removed by the court. Despite not having the financial ability to retain another attorney, however, Defendant formally waived his right to the appointment of counsel a second time and steadfastly refused to be appointed counsel by the court. He based his refusal upon frivolous allegations that his prior court-appointed attorneys were all lying in some way or another. Rather than accept a court-appointed attorney, which was repeatedly offered, Defendant appeared for trial without counsel despite repeated warnings that the case would proceed regardless of whether he had an attorney. A vast majority of the final three-year delay in Defendant's trial was caused by Defendant's tactics. "Such purposeful conduct and tactics to delay and frustrate the orderly processes of our trial courts simply cannot be condoned." *State v. Montgomery*, 138 N.C. App. 521, 525 (2000).

These facts are similar to, or more egregious than, the facts in other cases where our courts have found that the defendant forfeited his right to counsel. *See, e.g., State v. Rogers*, 194 N.C. App. 131 (2008) (over the course of two years, the defendant fired several attorneys, made unreasonable accusations about court personnel, reported one of his attorneys to the State Bar, accused another of racism, and was warned by the court about his behavior); *State v. Quick*, 179 N.C. App. 647 (2006) (the defendant waived court-appointed counsel in order to hire private counsel, but during an eight month period did not contact any attorney, instead waiting until the day before trial); *Montgomery*, 138 N.C. App. 521 (over the course of fifteen months, the defendant was twice appointed counsel, twice released his appointed counsel and retained private counsel, and then disrupted proceedings when counsel was unable to secure additional continuances of his trial).

The facts of this case "demonstrate forfeiture of the right to counsel because [D]efendant's actions totally undermine[d] the purposes of the right itself by making representation impossible and seeking to prevent a trial from happening at all." *Simpkins*, 373 N.C. at 536. Because we conclude that Defendant forfeited his right to counsel, we need not address his argument that the court erred by finding and concluding that he waived his right to counsel after being warned.

### III. Conclusion

For the reasons stated above, the court did not err by finding and concluding that Defendant forfeited his right to counsel. We find no error in the court's

judgment.

NO ERROR.

Judges ZACHARY and CARPENTER concur.